**United States District Court**
For the Northern District of California

1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                         NORTHERN DISTRICT OF CALIFORNIA
7
8    GORDON W. SHAW,                              No. C-07-3379 EMC
9              Plaintiff,
                                                 **ORDER DENYING PLAINTIFF'S**
10        v.                                     **MOTION FOR SUMMARY JUDGMENT**
                                                 **AND GRANTING DEFENDANT'S**
11   THE COMMISSIONER OF SOCIAL                  **CROSS-MOTION FOR SUMMARY**
     SECURITY ADMINISTRATION,                    **JUDGMENT**
12
              Defendant.                         **(Docket Nos. 19, 24)**
13   _____/
14
15        In March 2004, Gordon W. Shaw filed applications for disability insurance and
16   Supplemental Security Income ("SSI") benefits.  Mr. Shaw has, for the most part, exhausted his
17   administrative remedies with respect to his claim of disability.  This Court has jurisdiction for
18   judicial review pursuant to 42 U.S.C. § 405(g).  Mr. Shaw has moved for summary judgment or, in
19   the alternative, a remand for additional proceedings.  The Commissioner has cross-moved for
20   summary judgment.  Having considered the parties' briefs and accompanying submissions, the Court
21   hereby **DENIES** Mr. Shaw's motion for summary judgment and **GRANTS** the Commissioner's
22   motion.
23                   **I.    FACTUAL & PROCEDURAL BACKGROUND**
24        In March 2004, Mr. Shaw filed applications for disability insurance and SSI benefits,
25   alleging disability as of January 1, 2000.  *See, e.g.*, AR 60-62 (application for disability insurance
26
27
28

United States District Court

For the Northern District of California

benefits).[1]  The applications were initially denied on August 27, 2004, *see, e.g.*, AR 23-27 (notice of disapproved claims), and again on reconsideration on January 11, 2005.  *See, e.g.*, AR 29-34 (notice of reconsideration).  Mr. Shaw then sought an administrative hearing before an administrative law judge ("ALJ").  *See* AR 35 (request for hearing by ALJ).  A hearing was held before ALJ Richard P. Laverdure on June 1, 2006.  *See* AR 307-49 (ALJ hearing transcript).

On October 12, 2006, ALJ Laverdure held that Mr. Shaw was not disabled under the Social Security Act.  *See* AR 10-20 (ALJ decision).  The ALJ evaluated Mr. Shaw's claim of disability using the five-step sequential evaluation process for disability required under federal regulations.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations.  Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities.  Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix.  Benefits are awarded at step three if claimants are disabled.  Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work considering the claimant's age, education, and work experience together with the claimant's residual functional capacity ("RFC"), or what the claimant can do despite impairments.  Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government.  Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At step one, ALJ Laverdure found that Mr. Shaw had not engaged in substantial gainful activity since the alleged disability onset date of January 1, 2000.  *See* AR 14 (ALJ decision).  At step two, the ALJ concluded that Mr. Shaw had the following medically determinable impairments: a seizure disorder and osteoarthritis.  *See* AR 14.  At step three, the ALJ determined that the impairments did not meet or equal the criteria of any impairment in the List of Impairments set forth in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *See* AR 14.  At step 4, AL Laverdure found that Mr.

---

[1] The administrative record provided to the Court did not contain certain documents related to Mr. Shaw's application for SSI benefits.  *See* AR 5 (noting that "SSI Exhibits 1-5 are currently unavailable for inclusion at this time").  The absence of these documents is not material.

**United States District Court**
For the Northern District of California

1   Shaw "retain[ed] the residual functional capacity to perform medium work permitting him to

2   alternate between sitting and standing one time per hour as needed for brief periods." AR 18. The

3   ALJ also found that Mr. Shaw was "restricted from work involving heights, the use of heavy

4   machinery, and climbing ladders, ropes, or scaffolds" because of his seizure disorder. AR 18.

5   Based on this RFC and restriction, ALJ Laverdure concluded that Mr. Shaw could return to his past

6   work as a companion/personal attendant and therefore was not disabled. *See* AR 19.

7        On April 23, 2007, Mr. Shaw's request for review of ALJ Laverdure's decision was

8   summarily denied by the Appeals Council. *See* AR 6-8 (notice of Appeals Council decision). This

9   petition ensued.

10        In his motion for summary judgment, Mr. Shaw argues that ALJ Laverdure's decision was

11   erroneous because: (1) the ALJ rejected an opinion from a nurse practitioner without explaining

12   why; (2) the ALJ discounted Mr. Shaw's credibility in spite of the nurse practitioner's opinion; and

13   (3) the ALJ's findings at step four were flawed in that (a) the ALJ failed to consider all of the

14   limitations that Mr. Shaw's seizure disorder would have on his ability to do his past relevant work,

15   (b) the ALJ failed to recognize that Mr. Shaw's prior job as a caretaker for his mother could not be

16   considered past relevant work as it was sheltered from the rigors of the competitive workplace, and

17   (c) the ALJ failed to address the fact that Mr. Shaw's prior job as a caretaker as actually performed

18   exceeded the RFC for medium work.

19                **II.**   **DISCUSSION**

20   A.    <u>Legal Standard</u>

21        A court may disturb the final decision of the Social Security Administration "only if it is

22   based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v.*

23   *Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is

24   relevant evidence which a reasonable person might accept as adequate to support a conclusion."

25   *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993). Substantial evidence means "more than a

26   mere scintilla, but less than a preponderance." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)

27   (internal quotation marks omitted). The court's review "must consider the record as a whole," both

28   that which supports as well as that which detracts from the Secretary's decision. *Desrosiers v.*

United States District Court

For the Northern District of California

1    *Secretary of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "If the evidence admits of

2    more than one rational interpretation, [the court] must uphold the decision of the ALJ." *Allen v.*

3    *Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

4    B.    Opinion of Nurse Practitioner

5          As noted above, Mr. Shaw's first argument is that ALJ Laverdure improperly rejected an

6    opinion from a nurse practitioner, Barbara Turner, without explaining why. Ms. Turner was an

7    employee of West Oakland Health Center ("WOHC"). Over a four-year period, from September

8    2001 to November 2005, she treated Mr. Shaw approximately twenty times for issues related to the

9    impairments at issue. *See* AR 150-79 (records from WOHC); AR 180-84 (records from WOHC);

10   AR 210-15 (records from WOHC); AR 244-55 (records from WOHC).

11         Under the Social Security regulations, licensed physicians are considered "acceptable

12   medical sources," but nurse practitioners are not and instead are deemed "other medical sources."

13   *Compare* 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1) (acceptable medical source) *with id.* §§

14   404.1513(d)(1), 416.913(d)(1) (other medical source). Only acceptable medical sources can give

15   medical opinions, and therefore evidence from acceptable medical sources is needed to establish the

16   existence of a medically determinable impairment. *See* SSR 06-03p.[2] Evidence from other medical

17   sources cannot establish the existence of a medically determinable impairment but may still be used

18   to show the severity of an individual's impairment and how the impairment affects the individual's

19   ability to function. *See* SSR 06-03p.

20         Because acceptable medical sources are considered the most qualified health care

21   professionals, *see* SSR 06-03p, the Commissioner is allowed "to accord opinions from other

22   [medical] sources less weight than opinions from acceptable medical sources." *Gomez v. Chater*, 74

23   F.3d 967, 970-71 (9th Cir. 1996).

24              However, depending on the particular facts in a case, and after
               applying the factors for weighing opinion evidence [*see* 20 C.F.R. §§
25

26

27   _____

28      [2] SSR 06-03p became effective on August 9, 2006, prior to the date ALJ Laverdure issued his
     decision regarding Mr. Shaw's claim of disability.

**United States District Court**
For the Northern District of California

> 404.1527(d), 416.927(d)[3]], an opinion from [an other] medical source .
> . . may outweigh the opinion of an "acceptable medical source,"
> including the medical opinion of a treating source.  For example, it
> may be appropriate to give more weight to the opinion of a medical
> source who is not an "acceptable medical source" if he or she has seen
> the individual more often than the treating source and has provided
> better supporting evidence and a better explanation for his or her
> opinion.

SSR 06-03p.  Accordingly, the adjudicator of a disability claim must consider the opinions of other medical sources and "generally should explain the weight given to [such] opinions . . . , or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  SSR 06-03p.

In the instant case, ALJ Laverdure found that Mr. Shaw had two medically determinable impairments -- *i.e.*, a seizure disorder and osteoarthritis.  *See* AR 14 (ALJ decision).  Thus, ALJ Laverdure should have considered evidence of treatment by and/or opinions from Ms. Turner, as an other medical source, to evaluate the severity of Mr. Shaw's impairments and how the impairments affected his ability to function.

It is clear that ALJ Laverdure did consider the evidence of treatment by Ms. Turner.  In his decision, the ALJ took note that, from September 2001 to November 2005, Mr. Shaw had received treatment at WOHC for chronic pain management, *see* AR 16 (ALJ decision), and Ms. Turner was clearly the main person at WOHC who provided treatment.  It is also clear that the ALJ considered the opinion that Ms. Turner offered in March 2005 that Mr. Shaw was "unemployable" and could not climb, kneel, do knee bends, bend at the waist, or walk because of his impairments.  *See* AR 242-43 (Ms. Turner's opinion).  ALJ Laverdure specifically referred to the March 2005 opinion in his decision.  *See* AR 16 (ALJ decision).  Mr. Shaw argues, however, that it was not enough for the

---

[3] The factors listed in these regulations "explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources'" but may also "be applied to opinion evidence from 'other sources.'" SSR 06-03p.

United States District Court

For the Northern District of California

1    ALJ to have considered the March 2005 opinion; according to Mr. Shaw, the ALJ should have

2    explained why he rejected or discounted the opinion.[4]

3         As indicated above, Social Security Ruling 06-03p provides that an adjudicator of a

4    disability claim "generally should explain the weight given to [other medical source] opinions . . . ,

5    or otherwise ensure that the discussion of the evidence in the determination or decision allows a

6    claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may

7    have an effect on the outcome of the case."  SSR 06-03p.[5]  The ALJ's decision does not explicitly

8    discuss what weight, if any, Ms. Turner's opinion was given and the reasons therefor.  However, the

9    Court nonetheless is able to make a reasonable inference, based on the decision, as to what weight

10   the opinion was given and reasons therefor and accordingly finds no error here.  *Cf. Magallanes v.*

11   *Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our

12   faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

13        In her March 2005 opinion, Ms. Turner stated that, because of arthritis and seizures, Mr.

14   Shaw could not climb, kneel, do knee bends, bend at the waist, or walk.  *See* AR 242 (Ms. Turner's

15   opinion).  In his decision, the ALJ cited extensive medical evidence indicating that, in spite of the

16   arthritis, Mr. Shaw was not so limited.  *See* AR 16-17 (ALJ decision).  For example, in June 2004,

17   Dr. C.E. Gable, an internal medicine specialist, conducted a consultative examination of Mr. Shaw

18   at the Bayview Medical Clinic.  Dr. Gable noted, *inter alia*, that there was no deformity, heat,

19   swelling, or redness about Mr. Shaw's knees; that Mr. Shaw could flex his knees to about 130

---

[4] Ms. Turner also provided an opinion in June 2006 that Mr. Shaw was not employable.  *See* AR 119 (Ms. Turner's opinion).  In his motion for summary judgment, however, Mr. Shaw only takes issue with the ALJ's treatment of the March 2005 opinion.

[5] *See Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (acknowledging that "Social Security Rulings do not have the force of law" but stating that, "[n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations [and,] [a]ccordingly, we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the Act or regulations"); *see also Orn v. Astrue*, 495 F.3d 625  636 (9th Cir. 2007) (noting that, "'[a]lthough Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedents in adjudicating cases'") (quoting 67 Fed. Reg. 57859, 57860 (2002)); *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984) (stating that, "once published, a ruling is binding on all components of the Social Security Administration"; also stating that "[r]ulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same").

United States District Court

For the Northern District of California

1   degrees bilaterally; that, although Mr. Shaw could not make a full squat, purportedly because of his

2   knees, he did manage to kneel on one knee and then raise himself up without any help; that Mr.

3   Shaw's straight leg raising was negative to 70 degrees; and that Mr. Shaw had a normal gait.  *See*

4   AR 188.  Also in June 2004, Mr. Shaw was treated by Dr. Ananth Acharya at the neurology clinic of

5   the Alameda County Medical Center ("ACMC").  Similar to above, Dr. Acharya stated that Mr.

6   Shaw had a normal gait and only a slight limp secondary to pain.  *See* AR 279.  Finally, in July

7   2005, Mr. Shaw was treated by Dr. Lorinna H. Lombardi of the rheumatology clinic of the ACMC.

8   Dr. Lombardi acknowledged that Mr. Shaw had some limitation in the movement of his hips due to

9   pain but that he had a full range of motion in his knees with crepitus.  *See* AR 258.

10          As to Ms. Turner's opinions regarding the disabling effect of Mr. Shaw's seizures, ALJ

11   Laverdure cited in his decision medical evidence reflecting that Mr. Shaw's seizures -- which could

12   affect his ability to climb at least -- were decreasing and becoming under control as a result of

13   medication.  *See* AR 16 (ALJ decision).  For instance, in October 2004, Dr. Acharya noted that, after

14   Mr. Shaw was prescribed medication for his seizures, they decreased in frequency.  Dr. Acharya

15   changed the medication, however, because it was causing Mr. Shaw headaches.  *See* AR 273.  Dr.

16   Acharya's treatment notes in February 2005 reflected that the seizures were better controlled on the

17   new medication, and Dr. Acharya increased the dosage from 500 to 750 milligrams.  *See* AR 265.

18   Notably, Mr. Shaw admitted at the administrative hearing that the medication was treating his

19   seizures "fairly well," AR 324, a point that the ALJ took note of in his decision.  *See* AR 18 (ALJ

20   decision).  Finally, ALJ Laverdure noted in his decision that, based on the record submitted, it

21   appeared that Mr. Shaw had not been treated for any seizures since July 2005.  *See* AR 258.  Mr.

22   Shaw had scheduled an appointment with the ACMC's neurology clinic in January 2006 but had not

23   kept that appointment.  *See* AR 257.

24          For the foregoing reasons, the Court rejects Mr. Shaw's contention that the ALJ failed to

25   explain why he was rejecting the opinion of Ms. Turner.  It is evident from the ALJ's conclusion

26   that Ms. Turner's opinion was rejected in favor of the findings made by various doctors who reached

27   conclusions which contradicted Ms. Turner.  In short, the ALJ's reasoning was evident and

28   reasonable.

United States District Court

For the Northern District of California

C.     Mr. Shaw's Credibility

Mr. Shaw argues next that the ALJ improperly discounted Mr. Shaw's credibility, again based on the ALJ's rejection of Ms. Turner. Because the Court found no error above, it also rejects this argument. The Court further notes that there is no evidence that ALJ Laverdure deemed Ms. Turner's opinion evidence from a lay witness, as opposed to an other medical source.

D.     Step Four Findings

Finally, Mr. Shaw contends that the ALJ made various errors at step four of the five-step sequential evaluation process. Each claimed error is addressed below.

1.     Function-by-Function Analysis

According to the ALJ, Mr. Shaw had past relevant work as a caretaker for his mother, a job that most closely resembled a companion or personal attendant as defined in § 309.677-010 of the Dictionary of Occupational Titles.[6] *See* AR 19. Mr. Shaw argues that ALJ Laverdure failed to take into account that Mr. Shaw's seizure symptoms, in particular, sudden loss of consciousness and mobility, could at times prevent performance of "crucial parts" of his work as a caretaker for his mother -- most notably, his "responsibility to notify others of any emergency of material negative change in condition of his charge." Mot. at 5.

While Mr. Shaw's argument is not without some force, the problem is that (1) there is no indication that the job of companion/personal attendant as generally performed involves this particular responsibility and (2) Mr. Shaw never informed the ALJ or anyone else within the Social Security Administration ("SSA") that "his duties [as actually performed] included the responsibility [of] notify[ing] others of any emergency or material negative change in condition of his charge."[7] Mot. at 5. For example, in his initial disability report filed with the SSA, Mr. Shaw described his job caring for his mother as involving, *e.g.*, cooking and cleaning; no mention was made of having

---

[6] In his decision, the ALJ actually cited § 309.677-014 of the DOT, but, as Mr. Shaw notes, this appears to have been an error as that particular section addresses "foster parents," not companions or personal attendants.

[7] Social Security Ruling 82-62 provides that "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62.

United States District Court

For the Northern District of California

1    responsibility for notifying others of an emergency.  *See* AR 74-80.  Similarly, at the hearing before

2    the ALJ, Mr. Shaw simply testified that, as a caretaker for his mother, he did basic housecleaning,

3    bought groceries, and entertained her (*e.g.*, by reading to her or discussing soap operas with her).

4    *See* AR 339-42.  While Mr. Shaw did testify about a medic alert, he stated that it was his mother that

5    had the alert -- he had only the medic alert bracelet -- *see* AR 340 ("She had the medic alert.  I had

6    the medic alert bracelet."), which would suggest that he did not have the responsibility of notifying

7    others of an emergency.[8]

8         To the extent that Mr. Shaw is contending that the ALJ failed to make an explicit function-

9    by-function assessment as discussed in Social Security Ruling 96-8p,[9] that argument has been

10   rejected by other courts in *Tavares v. Astrue*, No. C 06-6583 PJH, 2007 U.S. Dist. LEXIS 93763, at

11   *34 (N.D. Cal. Dec. 21, 2007) ("Because this court's review of the record strongly suggests that the

12   ALJ considered [claimant's] function-by-function limitations *even if he did not explicitly state in his*

13   *decision that he was doing so*, [claimant] is not entitled to relief on this claim.") (emphasis added),

14   and *Catalano v. Barnhart*, No. C 04-2649 CRB, 2005 U.S. Dist. LEXIS 9397, at *21 ("Although the

15   ALJ did not engage in an *explicit* function-by-function analysis, he did consider all the appropriate

16   evidence in the record, including both medical consultants' function-by-function assessments, in

17   making his finding.  A reviewing court may use its own faculties for drawing specific and legitimate

18   inferences from the ALJ's opinion. . . . The ALJ properly relied on the function-by-function

19   assessment conducted by the consulting physicians and was not required to repeat the exercise.")

20   (emphasis added).  This Court agrees with *Tavares* and *Catalano*.  The ALJ discussed the opinion of

21   Dr. Gable (who assessed, *e.g.*, Mr. Shaw's ability to sit, stand, lift, etc.).  He also discussed the

22   opinion of the state agency (which assessed, *e.g.*, Mr. Shaw's ability to stand, push/pull, etc.).  *See*

23   AR 17 (ALJ decision).

24   _____

25        [8] In his reply, Mr. Shaw argues that the Commissioner, in his opposition brief, "admits that
     Plaintiff's job duties included awareness and ability to report medical changes in 'emergency' or 'medic
26   alert' mode."  Reply at 6.  The critical question is what Mr. Shaw testified his job duties were.  As noted
     above, Mr. Shaw testified that it was his mother who had the medic alert; he was responsible for only
27   the medic alert bracelet.

28        [9] Mr. Shaw makes no reference to this ruling in his papers, citing instead only Social Security
     Rulings 82-61 and 82-62.

2.      Competitiveness of Past Work as Caretaker

Mr. Shaw argues next that ALJ Laverdure erred in characterizing Mr. Shaw's past work as a caretaker for his mother as past relevant work under the Social Security regulations because, "to be considered past relevant work, a job must not have been sheltered from the rigors of the competitive workplace."  Mot. at 6; *see also* 20 C.F.R. §§ 404.1573(b), 416.973(b) ("If you are doing work that involves minimal duties that make little or no demands on you and that are of little or no use to your employer, or to the operation of a business if you are self-employed, this does not show that you are working at the substantial gainful activity level.").  The Court finds that the argument was waived because Mr. Shaw failed to assert the argument during the proceedings before the ALJ.  *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); *Marathon Oil Co. v. United States*, 807 F.2d 759, 767 (9th Cir. 1986) (stating that, "[a]s a general rule, we will not consider issues not presented before an administrative proceeding at the appropriate time."); *see also Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) (finding waiver due to failure to raise issue at hearing before ALJ, as opposed to the Appeals Council).[10]  At the hearing, the ALJ was clearly considering Mr. Shaw's job as a caretaker as past relevant work -- *e.g.*, posing hypotheticals to the vocational expert about that job -- but neither Mr. Shaw nor his counsel ever voice an objection on the basis that the job could not be considered past relevant work based on the differing or unique factual circumstances.  *Compare Silveira v. Apfel*, 204 F.3d 1257, 1260 n.8 (9th Cir. 2000) (considering an issue raised for the first time on appeal "because it is a pure question of law and the Commissioner will not be unfairly prejudiced by [plaintiff's] failure to raise the issue below"); *Kokal v. Massanari*, 163 F. Supp.2d 1122, 1129 (N.D. Cal. 2001) (Laporte, J.) (concluding that claimant who was *not* represented by counsel at administrative hearing did not waive issue by failing to raise it before ALJ).

---

[10] In *Sims v. Apfel*, 530 U.S. 103 (2000), the Supreme Court held that a Social Security claimant's failure to present an issue to the Appeals Council does not waive judicial review of that issue but specifically deferred ruling on whether a claimant must exhaust issues before the ALJ prior to seeking judicial review. *See id.* at 107, 112.  The First Circuit explained in *Mills* that "[t]he impact of a no-waiver approach at the Appeals Council level is relatively mild; at the ALJ level it could cause havoc, severely undermining the administrative process." *Mills*, 244 F.3d at 8.

**United States District Court**
For the Northern District of California

3.      Past Relevant Work as Actually Performed and Generally Performed

Finally, Mr. Shaw contends that ALJ Laverdure erred in failing to make a distinction between Mr. Shaw's caretaker job as actually performed and as generally performed and further erred with respect to his findings about the job as generally performed because there was no occupation listed in the DOT comparable to Mr. Shaw's.  Neither argument is availing.

First, the transcript for the hearing reflects that the ALJ did consider separately Mr. Shaw's caretaker job as actually performed, *see* AR 339-42, and as generally performed.  *See* AR 342-44.  The ALJ's decision also reflects such.  *See* AR 19 ("The vocational expert testified that the claimant's past work as a caretaker most closely resembles a companion/personal attendant, as defined in section 309.677-01[0] of the Dictionary of Occupational Titles.").  That the ALJ did not make specific findings about Mr. Shaw's ability to do his work as actually and generally performed is not material.  The Ninth Circuit has stated that it has "we have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed."  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).

Second, Mr. Shaw's contention that there was no occupation listed in the DOT comparable to his because his job involved the duty of lifting adult patients is without merit because he testified at the administrative hearing that, as a caretaker for his mother, he did not have to lift her.  *See* AR 341 (answering "no" to the question "Did you have to lift your mother").  Mr. Shaw explained that a nurse took care of his mother's personal duties.  *See* AR 341; *see also* AR 343 (vocational expert noting that Mr. Shaw did not lift his mother, transfer her to the bed, toilet, or shower, to which no objection was made by Mr. Shaw or his counsel).  Mr. Shaw points out that, in his initial disability report, he did make a claim that he "would assist [his] mother in going to and from the restroom, her bed, and the bathtub.  [He] would completely lift her up 6-7 times per day."  AR 76.  While this is true, Mr. Shaw fails to adequately explain why he then testified before the ALJ that he did not have to lift his mother.  *See* Mot. at 6 n.7 (acknowledging that "he also stated [at the hearing that] he did not lift his mother, *possibly* referring to a different period") (emphasis added).  Mr. Shaw's testimony at the hearing may properly be afforded greater weight by the ALJ than the initial disability report.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, Mr. Shaw's motion for summary judgment is denied and the Commissioner's cross-motion is granted.

This order disposes of Docket Nos. 19 and 24.


IT IS SO ORDERED.


Dated:  April 14, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**
For the Northern District of California

12